UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AMERICAN HONDA FINANCE
CORPORATION, a California corporation,

     Plaintiff,

v.                                                                    7:10-CV-0155
                                                                       (GTS/ATB)
V.M. PAOLOZZI IMPORTS, INC.,
a New York corporation d/b/a DealMaker
at Drum Honda, a/k/a DealMaker Honda of
Watertown; DEALMAKER OF POTSDAM,
LLC, a New York limited liability company
d/b/a DealMaker Honda of Potsdam;
MARK V. PICARAZZI; and PHILIP J. SIMAO,

     Defendants.
_____

V.M. PAOLOZZI IMPORTS, INC.,
a New York corporation d/b/a DealMaker
at Drum Honda, a/k/a DealMaker Honda of
Watertown; DEALMAKER OF POTSDAM,
LLC, a New York limited liability company
d/b/a DealMaker Honda of Potsdam;
MARK V. PICARAZZI; and PHILIP J. SIMAO,

     Counter-Claimaints,

v.

AMERICAN HONDA FINANCE
CORPORATION, a California corporation,

     Counter-Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

McELROY DEUTSCH MULVANEY                              LOUIS A. MODUNGO, ESQ.
  & CARPENTER, LLP
  Counsel for Plaintiff and Counter-Defendant
40 West Ridgewood Aveune
Ridgewood, NJ 07450

MENTER RUDIN & TRIVELPIECE, P.C.                      JULIAN B. MODESTI, ESQ.
  Co-Counsel for Plaintiff and Counter-Defendant      TERESA M. BENNETT, ESQ.
308 Maltbie Street, Suite 200
Syracuse, NY 13204

MaMAHON, KUBLICK & SMITH, P.C.                        JAN S. KUBLICK, ESQ.
  Counsel for Defendant and Counter-Claimant Simao
500 South Salina Street, Suite 816
Syracuse, NY 13202

SCOLARO SHULMAN COHEN                                 CHAIM J. JAFFE, ESQ.
  FETTER & BURSTEIN, P.C.                             SARAH E. HANOVER, ESQ.
  Counsel for Defendants and Counter-Claimants
  Other than Simao
507 Plum Street, Suite 300
Syracuse, NY 13204

GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

Currently before the Court, in this breach-of-contract action filed by American Honda

Finance Corp. ("Plaintiff") against V.M. Paolozzi Imports, Inc., DealMaker of Potsdam, Mark V.

Picarazzi, and Philip J. Simao ("Defendants"), is Plaintiff's motion for summary judgment.

(Dkt. No. 52.)  For the reasons set forth below, Plaintiff's motion for summary judgment is

granted.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Claims

Liberally construed, Plaintiff's Complaint asserts the following three claims: (1) a claim

for breach of wholesale finance agreements; (2) a claim for breach of notes and security

agreements; and (3) a claim for breach of continuing guaranties.  (*See generally* Dkt. No. 1.)  As relief, Plaintiff asks for damages of six million, three-hundred-fifteen thousand, nine-hundred-thirty-eight dollars and twelve cents ($6,315,938.12), plus interest, compensatory damages, expenses, and costs and attorneys' fees. (*Id.*)

Generally, in support of its claims, Plaintiff asserts the following factual allegations.  On or about April 2007 and April 2008, Defendant V.M. Paolozzi Imports, Inc. (hereinafter "DealMaker of Watertown") entered into an Automotive Wholesale Financing and Security Agreement (hereinafter "Watertown Agreement") with Plaintiff, pursuant to which Plaintiff agreed to provide secured wholesale inventory financing to Defendant DealMaker of Watertown. On or about April 2008, Defendant DealMaker of Potsdam, entered into an Automotive Wholesale Financing and Security Agreement (hereinafter "Potsdam Agreement") with Plaintiff, pursuant to which Plaintiff agreed to provide secured wholesale inventory financing to Defendant DealMaker of Potsdam.

To secure their obligations, both Defendant DealMaker of Watertown and Defendant DealMaker of Potsdam (hereinafter "Defendant Dealerships") granted Plaintiff a security interest in their motor vehicles, parts, inventory, furniture, fixtures, equipment, accounts, instruments, letters of credit, contract rights, intangible property, investment property, books and records, personal property assets, and all the proceeds of these things (hereinafter "Watertown Collateral" and "Potsdam Collateral," respectively).  In addition, Defendant Dealerships were contractually obligated to hold the proceeds of sale of any unit of inventory ("Inventory"), up to the full amount of any advance made to finance the acquisition of the unit of Inventory, plus interest at an agreed upon rate, less any payment of credit (the "Allocable Amount") in trust for Plaintiff, and to pay over those trust funds to Plaintiff  immediately upon the sale of the unit of inventory.

On or about April 19, 2007, April 23, 2007, and April 27, 2008, Simao and Picarazzi ("Defendant Guarantors") executed a Continuing Personal Guaranties in favor of Plaintiff. Under these agreements, Defendant Guarantors were to be liable for the Wholesale Finance Agreements if Defendants defaulted on their obligations.  Subsequently, Defendant DealMaker of Watertown defaulted on its obligations under the Watertown Agreement, and Defendant DealMaker of Potsdam defaulted on its obligations under the Potsdam Agreement, by failing to pay the loan balances when due.  (*Id.*)

Familiarity with the remaining factual allegations supporting the claims in Plaintiff's Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties.  (*Id.*)

### B.    Defendants' Answers and Counterclaims

Liberally construed, Defendants' Answers and Counterclaims assert the following eight affirmative defenses: (1) failure to comply with implied obligation of good faith and fair dealing; (2) bad faith; (3) failure to give proper credit to Defendants' accounts; (4) unclean hands; (5) negligence; (6) failure to mitigate damages; (7) estoppel; and (8) waiver.  (Dkt. Nos. 36, 40 [Defs.' Answers and Counterclaims].)  Defendants' Answers and Counterclaims also assert the following four counterclaims: (1) a claim for breach of contract; (2) a claim for breach of the Automobile Dealers' Day in Court Act,  15 U.S.C. § 1221, *et seq*. ("ADDCA"); (3) a claim for attorney's fees under the ADDCA; and (4) a claim for punitive damages.  (*Id.*)  As relief, Defendants ask for damages in an amount to be determined at trial, but not less that sixteen million dollars ($16,000,000.00), punitive damages equal to ten times the amount of actual damages, and costs and attorneys fees. (*Id.*)

Generally, in support of their counterclaims, Defendants assert the following factual allegations.  Plaintiff acted in bad faith in its performance of its contracts with Defendants. Plaintiff knowingly and voluntarily extended credit to Defendants beyond standard floor plan financing and then abruptly, and without adequate notice, discontinued its line of credit. Plaintiff sent multiple default notices to Defendants.  Plaintiff assured Defendants that it had no intention of discontinuing its financing.  In or about October 2009, Plaintiff retained InnovAuto Group, LLC ("InnovAuto"), to audit the inventory and act as "Keepers" (outside monitors to hold certain automobile documents and monitor sales and activities of Plaintiff's collateral and report to Plaintiff ).  On or about January 28, 2010, Defendant Simao and Francy discussed the possibility of Plaintiff discontinuing its financing.  Defendants prepared a workout plan and began talks with Plaintiff.  Executives at Plaintiff entered into a "Gentleman's Agreement," pursuant to which Plaintiff agreed to temporarily forgo publicity or legal action against Defendants until the workout plan had been submitted and discussed.  On or about February 3, 2010, Defendant Simao received a letter from Laurie Methot of Honda Finance, stating that Plaintiff had never agreed to a "stand still" or to "refrain from any court action." As a result, Defendant Simao agreed to provide additional collateral to Plaintiff and turned over the keys. On or about February 9, 2010, four days after the workout plan was submitted, Plaintiff filed this action. (*Id.*)

Familiarity with the remaining factual allegations supporting Defendants' Counterclaims is assumed in this Decision and Order, which is intended primarily for review by the parties. (*Id.*)

### C.    Parties' Briefing on Plaintiff's Motion

Generally, in its motion for summary judgment, Plaintiff asserts the following four arguments: (1) under the circumstances, the law of the State of New York applies; (2) based on

the undisputed material facts, Plaintiff has established, as a matter of law, a *prima facie* case (a) against Defendant Dealerships for breach of the finance agreements and term loan agreements, (b) against Defendant Guarantors for breach of their unconditional guaranties, and (c) against all Defendants for foreclosure on the security agreements; (3) based on the undisputed material facts, the unconditional guaranties bar the Guarantors' affirmative defenses and counterclaims as a matter of law; and (4) even in the absence of such a bar, based on the undisputed material facts, Defendants' equitable defenses, legal defenses, and counterclaims are without merit, as a matter of law. (Dkt. No. 52, Attach. 12, at 24-58 [attaching pages "14" through "48" of Plf.'s Memo. of Law].)

Generally, in response, Defendants assert the following four arguments: (1) under the circumstances, the law of the State of New York applies; (2) with regard to Plaintiff's third and fourth arguments described above, those arguments should be rejected because (a) Defendants have adequately plead their equitable defenses of estoppel, waiver and failure to mitigate damages, and (b) Plaintiff's conduct and oral agreements rendered its rights and remedies unenforceable under the Wholesale Finance agreements; (3) even if summary judgment should not be denied based on the foregoing ground, it should be denied under Fed. R. Civ. P. 56(d), because Plaintiff has denied Defendants access to potentially favorable information; and (4) the Court should refuse to dismiss Defendants' counterclaim under ADDCA, because, based on the current record, a genuine dispute of material fact exists as to whether Plaintiff is liable on that counterclaim. (Dkt. No. 64, Attach. 4, at 14-35 [attaching pages "9" through "30" of Defs.' Opp'n Memo. of Law].)

Generally, in its reply, Plaintiff asserts the following seven arguments: (1) as an initial matter, Defendants' response to Plaintiff's motion fails to address Plaintiff's request for summary judgment on its claims for breach of contract, and on Defendants' counterclaim for

punitive damages, thus lightening Plaintiff's burden on those aspects of its motion; (2) the doctrines of equitable estoppel and waiver do not bar Plaintiff from exercising its rights, because there is no admissible record evidence establishing (a) an inducement by Plaintiff, (b) substantial reliance by Defendants, and (c) a resulting detriment to Defendants; (3) there is no admissible record evidence establishing Defendants' affirmative defense that Plaintiff breached the implied covenant of good faith and fair dealing; (4) Plaintiff is not liable under the ADDCA as a matter of law, because there is no admissible record evidence establishing either (a) that Plaintiff is an agent of Honda Motors or (b) that Plaintiff has acted in bad faith under the ADDCA; (5) under the circumstances, the parties' settlement negotiations cannot form the basis for denial of Plaintiff's motion for summary judgment, and should be disregarded under Fed. R. Evid. 408; (6) the discovery requested by Defendants is irrelevant and fails to raise any genuine dispute of material; and (7) Defendants' response to Plaintiff's statement of material facts was improper, because numerous paragraphs of that response fail to set forth any citation to the record.  (Dkt. No. 69, Attach. 2, at 7-30 [attaching pages "1" through "24" of Plf.'s Reply Memo. of Law].)

### D.      Undisputed Material Facts

Generally, the following facts are not disputed by the parties. (*Compare* Dkt. No. 52, Part 4 [Plf.'s Rule 7.1 Statement] *with* Dkt. No. 64, Part 1 [Defs.' Rule 7.1 Response].) Plaintiff is a California corporation authorized to conduct the business of establishing and maintaining wholesale line of credit for authorized vehicle dealerships in the State of New York and elsewhere.  Plaintiff established credit lines and provided purchase money financing to enable participating Honda dealers to acquire in-store inventory for sale to the public.  Defendant Dealerships became authorized Honda dealers to which Plaintiff extended credit lines and purchase money financing to acquire in-store Inventory for retail sale.

Pursuant to the parties' agreements, Defendants were contractually obligated to hold the proceeds of the sale of any unit of Inventory, up to the full amount of any advance made to finance the acquisition of the unit of Inventory, plus interest at an agreed upon rate, less any payment or credit (the "Allocable Amount"), in trust for Plaintiff, and to pay over to Plaintiff these trust funds immediately upon the sale of the unity of inventory.

In or about April 2007, Plaintiff granted Defendant DealMaker Watertown a term loan in the amount of $500,000 by means of a Term Loan Agreement.  On or about April 23, 2007, Plaintiff and Defendant DealMaker Watertown entered into a Wholesale Finance Agreement.  In or about April 2008, Plaintiff granted Defendant DealMaker Potsdam a term loan in the amount of $320,000 by means of a Term Loan Agreement.  On or about July 2, 2008, Plaintiff and Defendant DealMaker Potsdam entered into a Wholesale Finance Agreement.

Under the Wholesale Finance Agreements, Plaintiff advanced floor plan lines of credit to Defendant Dealerships to finance the purchase of in-store inventory of Honda vehicles for retail sale.  During the term of the respective Wholesale Finance Agreements, Plaintiff delivered monthly billing statements to Defendant Dealerships reflecting all advances made by Plaintiff under the Finance Agreements.

Between April 2007 and August 2008, several continuing guaranties were made by Defendants in favor of Plaintiff.  On or about April 19, 2007, April 23, 2007, and April 27, 2008, Defendants Simao and Picarazzi executed Continuing Personal Guaranties in favor of Plaintiff. On or about May 2008, Defendant DealMaker Watertown executed a Continuing Corporate Guaranty in favor of Plaintiff.  On or about July 2, 2008, Defendant Simao executed both a Continuing Guaranty and a Continuing Personal Guaranty in favor of Plaintiff.  Plaintiff made demands upon Defendants DealMaker Watertown, Simao and Picarazzi to honor their Continuing Guaranties to pay the amounts due and owing to Plaintiff.

As early as December 2008, Defendants stopped turning over the Allocable Amounts to Plaintiff immediately upon the sale of the units of Inventory. In or about October 2009, to protect its collateral, Plaintiff arranged for outside monitors to monitor the activities of Defendants and the sales of the Inventory and to be paid for by Defendants.

On or about April 7, 2009, June 22, 2009, October 20, 2009, and January 19, 2010, Plaintiff sent a letter to Defendant Dealerships regarding a default under the terms and conditions of the Wholesale Finance Agreements and Term Loan Agreements.  On or about January 29, 2010, Plaintiff asked Defendant Dealerships to voluntarily surrender the vehicles financed by Plaintiff. However, Defendants refused to do so.

Familiarity with the remaining undisputed material facts of this action, as well as the disputed material facts, as set forth in the parties' Rule 7.1 Statement and Rule 7.1 Response, is assumed in this Decision and Order, which (again) is intended primarily for review by the parties.  (*Id*.)

## II.    RELEVANT LEGAL STANDARD

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a genuine dispute of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact."  *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the moving party has met this initial responsibility, the nonmoving party must

9

come forward with specific facts showing a genuine dispute of material fact for trial.  Fed. R. Civ. P. 56(a),(c),(e).

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party."  *Anderson*, 477 U.S. at 248.  As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts" [citations omitted].  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id*. [citation omitted].

Implied in the above-stated burden-shifting standard is the fact that, where a nonmoving party willfully fails to adequately respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[1]  For this reason, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a moving party's statement to have been admitted where the nonmoving party has willfully failed to properly respond to that statement.[2]

---

[1]    *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

[2]    *Cusamano*, 604 F. Supp.2d at 427 & n.6 (citing cases).  Among other things, Local Rule 7.1(a)(3) requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

Rule 56(d) of the Federal Rules of Civil Procedure provides as follows:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

This rule has been appropriately characterized as providing as "a narrow exception to the availability of summary judgment in instances where a party cannot fairly respond to a summary judgment motion because of the inability, through no fault of that party, to acquire evidence which is available and would preclude the entry of summary judgment." *Steptoe v. City of Syracuse,* 09-CV-1132, 2010 WL 5174998, at *4 (N.D.N.Y. Oct. 5, 2010) (Peebles, M.J.), *adopted by* 2010 WL 5185809 (N.D.N.Y. Dec. 15, 2010) (Mordue, C.J.).[3] To obtain relief under Fed. R. Civ. P. 56(d), a litigant must submit an affidavit showing "(1) what facts are sought to resist the motion and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine dispute of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant has been unsuccessful in those efforts." *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 303 (2d Cir. 2003).[7] *Car-Freshner Corp. v. Getty Images, Inc.,* 09-CV-1252, 2011 WL 4527782 at *3-4 (N.D.N.Y. Sept. 28, 2011) (Suddaby, J.).

## III.    ANALYSIS

Generally, the parties' briefing on Plaintiff's motion raises the following six issues for the Court to decide: (1) whether the law of the State of New York applies; (2) whether, based on the undisputed material facts, Plaintiff has established, as a matter of law, a *prima facie* case (a)

---

[3]    *Accord, Gill v. Calescibetta*, 00-CV-1553, 2009 WL 890661, at *7 (N.D.N.Y. March 31, 2009) (Report-Recommendation by Peebles, M.J., adopted by Suddaby, J.); *Gill v. Hoadley*, 261 F. Supp.2d 113, 132 (N.D.N.Y. 2003) (Peebles, M.J.), *adopted by* 01-CV-0323, Memorandum-Decision and Order (N.D.N.Y. filed Jan. 9, 2004) (Scullin, C.J.).

against Defendant Dealerships for breach of the finance agreements and term loan agreements, (b) against Defendant Guarantors for breach of their unconditional guaranties, and (c) against all Defendants for foreclosure on the security agreements; (3) whether, based on the undisputed material facts, the unconditional guaranties bar the Guarantors' affirmative defenses and counterclaims as a matter of law; (4) whether, even in the absence of such a bar, based on the undisputed material facts, Defendants' equitable defenses, legal defenses, and counterclaims are without merit, as a matter of law; (5) whether summary judgment should nonetheless be denied under Fed. R. Civ. P. 56(d), because Plaintiff has denied Defendants access to potentially favorable information; and (6) the nature of the relief to which Plaintiff is entitled, should the Court grant Plaintiff's motion.

### A.    Whether the Law of the State of New York Applies

The first issue before the Court is whether the law of the State of New York applies.  A federal court in a diversity case must look to the choice-of-law rules of the state in which it sits to resolve conflict-of-law issues.  *Klaxon Co. v. Stentor Elec. Mfg. Co. Inc.*, 313 U.S. 487, 496 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 71-79 (1938); *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 269-70 (2d Cir. 1992).  Pursuant to New York's choice-of-law rules, to determine the law that governs a contractual relationship between the parties, the court is to apply the "paramount interest" test, under which the court must apply the law of the state with the "greatest interest in the litigation." *Tischmann v. ITT/Sheraton Corp.*, 882 F. Supp. 1358, 1366 (S.D.N.Y. 1995) (quoting *Crescent Oil & Shipping Servs., Ltd. v. Phibro Energy, Inc.,* 929 F.2d 49, 52 [2d Cir. 1991]).  In determining which state's interest is paramount, the most significant facts or contacts are those that "relate to the purpose of the particular [substantive] law in conflict." *Tischmann,* 882 F. Supp. at 1366 (citing *Hutner v. Greene*, 734 F.2d 896, 899 [2d Cir.

1984].)[4]

Here, although the Agreements state that California law governs,[5] the Court finds that New York has the "greatest interest in litigation." *Id.* This is because (1) the place of performance was New York, (2) the Dealerships were located in New York, (3) the collateral was located in New York (which had the additional result of causing the parties to consent to the Court's jurisdiction),[6] and (4) the parties (in their memoranda of law) have expressly consented to the application of the substantive law of New York in this action. (Dkt. No. 52, Attach. 12, at 24 [attaching page "24" of Plf.'s Memo. of Law]; Dkt. No. 64, Attach. 4, at 14 [attaching page "9" of Defs.' Memo. of Law].)

For these reasons, the Court finds that the law of the State of New York applies.

**B.    Whether Plaintiff Has Established a *Prima Facie* Case (1) Against Defendant Dealerships for Breach of the Finance Agreements and Term Loan Agreements, (2) Against Defendant Guarantors for Breach of Their Unconditional Guaranties, and (3) Against All Parties for Foreclosure on the Security Agreements**

The second issue before the Court is whether, based on the undisputed material facts, Plaintiff has established, as a matter of law, a *prima facie* case (a) against Defendant Dealerships

---

[4]    For the purpose of this analysis, the Court will assume that the substantive law of California is in fact in conflict with that of New York, although that fact is far from clear based on the briefing of the parties.

[5]    Specifically, Section 10 of the Wholesale Finance Agreements provides as follows, in pertinent part: "THIS AGREEMENT, AND ALL RIGHTS AND DUTIES UNDER IT, AND ALL CHARGES LEVIED OR ASSESSED BY AHFC, SHALL BE INTERPRETED, CONSTRUED AND GOVERNED ACCORDING TO THE LAWS OF THE STATE OF CALIFORNIA."

[6]    Specifically, Section 10 of the Wholesale Finance Agreements provides as follows, in pertinent part: "Dealer irrevocably submits and consents to the non-exclusive jurisdiction of the State and Federal Courts located in the State of California and any other State where any Collateral is located, with respect to any action or preceding related to this Agreement, the Obligations, the Collateral or any matter arising from or relating to the Agreement."

for breach of the finance agreements and term loan agreements, (b) against Defendant Guarantors for breach of their unconditional guaranties, and (c) against all Defendants for foreclosure on the security agreements.  After carefully considering the parties' arguments on this issue, the Court answers this question in the affirmative, for the reasons stated by Plaintiff in its memorandum of law.  (Dkt. No. 52, Attach. 12, at 26-32 [attaching pages "16" through "22" of Plf.'s Memo. of Law].)  The Court would add only a few points.

Under New York law, a creditor seeking to enforce a written guaranty upon summary judgment "need prove no more than [1] an absolute and unconditional guaranty, [2] the underlying debt, and [3] the guarantor's failure to perform under the guaranty."  *Kensington House Co. v. Oram*, 739 N.Y.S.2d 572, 572-73 (N.Y. App. Div., 1st Dept. 2002) (citing *City of New York v. Clarose Cinema Corp.*, 681 N.Y.S.2d. 251, 253 [N.Y. App. Div., 1st Dept. 1998]); *Citicorp Leasing, Inc. v. Kusher Family Ltd. P'ship*, 05-CV-9163, 2006 WL 1982757, at *3 (S.D.N.Y. July 14, 2006); *Coated Fabrics Co. v. Mirle Corp.*, 06-CV-5415, 2008 WL 163598, at *5 (E.D.N.Y. Jan. 16, 2008).[7]  Absolute and unconditional guaranties are enforceable when written in "clear and unambiguous language," which is not generalized.  *Otto Roth & Co. v. Gourmet Pasta,* Inc., 715 N.Y.S.2d 78, 80 (N.Y. App. Div., 2d Dept. 2000); *see also Mfrs. Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 316 (2d Cir. 1993).

Here, the undisputed material facts establish all three above-described elements.  The parties entered into a contract with an absolute and unconditional guaranty pursuant to which Defendant Dealerships were required to pay Plaintiff; Defendant Dealerships subsequently failed to pay Plaintiff, incurring the underlying debt; and Defendant Guarantors failed to perform under

---

[7]      *See also Buffalo and Erie Cnty. Regional Dev. Corp. v. World Auto Parts, Inc.*, 761 N.Y.S.2d 893, 894 (N.Y. App. Div., 4th Dept. 2003) ("We agree with the court that plaintiff established its entitlement to summary judgment against Chaikovska by submitting the unconditional guaranty signed by her, proof of the underlying debt and proof of Chaikovska's failure to perform under the guaranty.").

the guaranty. (Dkt. Nos. 52, 64.) Simply stated, because Defendants failed to perform, they are in breach of contract. The Court notes that Defendants do not dispute that the absolute and unconditional guaranty was sufficiently clear, unambiguous and specific. (*See generally* Dkt. No. 63, Attach. 4 [Defs.' Memo. of Law].)

More specifically, the Court bases its finding of liability on the following analysis. With regard to the first element of the *Kensington* test (i.e., the existence of an absolute and unconditional guaranty), Section 3.1, Amount Due, of the Wholesale Finance Agreement states as follows:

> The total amount outstanding from time to time of all Advances shall be a single obligation of Dealer, even though Advances are made from time to time. The terms of payment, interest rate, due dates and other terms shall be as specified by AHFC from time to time in AHFC Bulletins, monthly billing statements or other written communications. The total amount of all Advances, or any portion of that amount as demanded, together with interest, shall be payable by dealer to AHFC upon demand.

Section 7.1 of the Wholesale Finance Agreements states, "Failure of Dealer to make any payment under this Agreement or as evidence through AHFC Bulletins, monthly billing statement or other written notices to Dealer when due and payable."

As a result, before receiving loans from Plaintiff, Defendant Dealerships agreed by contract that failure to make any payment when due was an event of default. Section 7 of both the Watertown Agreement and the Potsdam Agreement describes what constitutes an Event of Default (and what would subsequently occur in the event that such a default occurs). Under Section 7.1.1 of the Wholesale Finance Agreements, Defendant Dealerships agreed that an Event of Default includes the "Failure of the Dealer to make any payment under this Agreement or as evidenced through AHFC Bulletins, monthly billing statements or other written notices to Dealer when due and payable." (Dkt. No. 52.)

The Continuing Personal Guaranties executed by Defendants Simao and Picarazzi dated April 19, 2007, and April 23, 2007, secured the Watertown and Potsdam Agreements. Sections 2, 3 and 6 of the Continuing Personal Guaranties state as follows:

> Guarantor hereby unconditionally guarantees and promises to pay and perform promptly the Guaranteed Obligations . . . . This Guaranty is irrevocable and continuing in nature and relates to any Guaranteed Obligations now existing or hereafter arising. Guarantor expressly waives any right to terminate, repudiate, revoke or rescind this Guaranty so long as any portion of the Guaranteed Obligations remain outstanding. This Guaranty is a guaranty of prompt and punctual payment and performance and is not merely a guaranty or collection . . . . AHFC shall be entitled to payment or performance hereunder, with or without demand therefor, at any time upon the occurrence and during the continuation of an Event of Default.

For these reasons, the Court finds that Defendants Simao and Picarazzi provided to Plaintiff an absolute and unconditional guaranty of their loans from Plaintiff.

Turning to the second element of the *Kensington* test (i.e., the existence of an underlying debt), according to Defendants' Rule 7.1 Response, Defendant DealMaker Potsdam was opened "in the middle of this country's recession . . . and under oppressive financial circumstances," at the insistence of Honda Motors, which is not a party to this action. (Dkt. No. 64, Attach. 1, at 9.) Defendants explain that, upon opening, Defendant DealMaker Potsdam "lost money and subsequently could not pay off its line of credit within the time frame set forth in the Agreements." (*Id.*) Defendants further state, "Since December 2008, Honda Finance has been aware that DealMaker has been in default." (*Id.*) For these reasons, the Court find the existence of the underlying debt.

Finally, with regard to the third element of the *Kensington* test (i.e., the guarantor's failure to perform under the guaranty), Defendant Guarantors have failed to perform their obligations under the absolute and unconditional guaranty because they failed to pay the debt in

full when Plaintiff demanded payment.  Despite continued correspondence and an understanding of their default starting in December 2008, Defendants have failed to satisfy their obligations under the Watertown Agreement and the Potsdam Agreement.  For these reasons, the Court finds that the Guarantors have failed to perform under the guaranty.

Finally, the Court notes that it agrees with Plaintiff that, in their opposition memorandum of law, Defendants chose not to respond to this argument, but instead focus on their affirmative defenses of estoppel and waiver.  (*See generally* Dkt. No. 69, Attach. 2, at 7, n.1 [attaching page "1" of Defs.' Opp'n Memo. of Law].)  When a party opposing a motion for summary judgment fails to respond to an argument contained in the motion, the moving party's burden with respect to that argument is lightened such that, in order to succeed, the argument need only have facial merit.  *Rescuecom Corp. v. Chumley*, 07-CV-0690, 2011 WL 2791272, at *3 & n.4 (N.D.N.Y. July 14, 2011) (Suddaby, J.) (collecting authorities).  Here, the Court finds that Plaintiff has met its lightened burden.  The Court would add only that it would reach the same conclusion even if it were to subject Plaintiff's request to the more rigorous scrutiny appropriate for a contested argument.

**C.    Whether the Unconditional Guaranties Bar the Guarantors' Affirmative Defenses and Counterclaims**

The third issue before the Court is whether, based on the undisputed material facts, the unconditional guaranties bar the Guarantors' affirmative defenses and counterclaims as a matter of law.  After carefully considering the parties' arguments on this issue, the Court answers the issue in the affirmative, for the reasons stated by Plaintiff in its memoranda of law.  (Dkt. No. 52, Attach. 12, at 33-35 [attaching pages "23" through "25" of Plf.'s Memo. of Law].)  The Court would add only a few points.

The Guarantors' Waivers Section of the Continuing Personal Guaranties states as follows:

> Guarantor also waives any and all rights or defenses arising by reason of (h) any disability or other defense or Obligor, any other guarantor or surety or any other person; (i) the cessation from any cause whatsoever, other than payment in full, or the Indebtedness[;] or (j) the application or proceeds of the Indebtedness by Obligator for purposes other than the purposes understood and indebted by Guarantor and AHFC; (k) any act or omission or commission by AHFC which directly or indirectly results in or contributes to the discharge of Obligor or any other guarantor or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise; (l) any state of limitation in any action under this Guaranty or on the Indebtedness; or (m) any modification or change in terms of the Indebtedness, whatsoever, including any such modification or change in terms after revocation of this Guaranty on Indebtedness incurred prior to such revocation.

Further, Section 9.6 of the Wholesale Finance Agreement states, "Except as stated in this Agreement, no amendment or modification of this Agreement shall be effective unless in writing an signed by the parties to this Agreement."

Section 1 of New York's General Obligations Law prohibits oral modification of an agreement that contains a provision against oral modification. N.Y. Gen. Oblig. Law § 15-301 (McKinney 1963). Under the law, "a written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent." *Id.* As a result, the Court finds that the Guarantors' Waivers of the Continuing Personal Guaranties are binding.

It is true that that "the application of this section may be excused by an executed oral modification, partial performance or estoppel." *Marine Midland Bank, N.A. v. Quality Exterior*

*Corp.*, 460 N.Y.S.2d 159, 160 (N.Y. App. Div., 3d Dep't 1983) (citing *Rose v. Spa Realty Assoc.*, 42 N.Y.2d 338, 343-44 [N.Y. 1977]).  Here, Defendants argue that the doctrine of equitable estoppel applies, and should preclude Plaintiff from enforcing the prohibition against oral modification.

More specifically, Defendants argue that, although the Agreements in this case contain "no oral modifications" clauses, Plaintiff's conduct and oral representations indicating that it would refrain from declaring a default and continue funding the DealMaker Defendants' operations until the parties discussed the work out plan submitted to it have estopped it from declaring a default and litigating this action.

Plaintiff does not dispute that such conduct and representations occurred. Rather, Plaintiff disputes that the conduct and representations modified the Wholesale Finance Agreements and the Term Loan Agreements.  Defendants argue that, based on this dispute with Plaintiff, a genuine dispute of material fact exists as to whether equitable estoppel precluded Honda Finance from enforcing the "no oral modification" provision and Gen. Oblig. Law § 15-301.

The problem with Defendants argument is that the "dispute" in question is not material (or even factual, really), given the nature of the law.  Under the law, "unconditional guaranties have been held to foreclose, as a matter of law, guarantors from asserting any defenses or counterclaims."  *First New York Bank for Bus. v. DeMarco*, 130 B.E. 650, 654 (S.D.N.Y. 1991) (citing *Citibank, N.A. v. Plapinger*, 485 N.E.2d 974, 975 [N.Y. 1985]).[8]  Here, the guaranties are

_____

[8]        *See also Ursa Minor Ltd. v. Aon Fin. Prods., Inc.*, 00-CV-2474, 2000 WL 1010278, at *8 (S.D.N.Y. July 21, 2000) ("It is well settled under New York law that such guarantees are enforceable, and bar the assertion of affirmative defenses."); *Crossland Fed. Savs. Bank v. A. Suna & Co.*, 935 F. Supp. 184, 192-93 (E.D.N.Y.1996) ("When an executed guaranty contains such unconditional language, the guarantors are barred from raising any affirmative defenses."); *Regency Equities Corp. v. Reiss*, 93-CV-8096, 1995 WL 362496, at *2 (S.D.N.Y. June 16, 1995) (holding that, when terms of guaranty are "unconditional" debtor "has waived

of an unconditional (and conditional) nature.  As a result, the Court finds that the unconditional guaranties bar the Defendant Guarantors' affirmative defenses and counterclaims, as a matter of law.

Even if the dispute referenced by Defendants is one of material fact, that dispute is resolved below in Part III.D. of this Decision and Order.

**D.    Whether, Even in the Absence of Such a Bar, Defendants' Equitable Defenses, Legal Defenses, and Counterclaims Are Without Merit**

The fourth issue before the Court is that, even in the absence of the bar referenced above in Part III.C. of this Decision and Order, based on the undisputed material facts, the equitable defenses, legal defenses, and counterclaims asserted by the Defendant Guarantors–as well as those asserted by the Defendant Dealerships–are without merit, as a matter of law.  After carefully considering the parties' arguments on this issue, the Court answers this issue in the affirmative for the reasons stated by Plaintiff in its memoranda of law.  (Dkt. No. 52, Attach. 2, at 35-58 [attaching pages "25" through "48" of Plf.'s Memo. of Law]; Dkt. No. 69, Attach. 2, at 8-26 [attaching pages "2" through "20" of Plf.'s Reply Memo. of Law].) The Court would add only a few points.

At the heart of Defendants' argument that this issue must be answered in the negative is their argument that Plaintiff's conduct and oral agreements rendered its rights and remedies unenforceable.  According to Defendants, some of this conduct and these oral agreements occurred during the parties' pre-action settlement negotiations.

---

this defense [of novation], along with all other defenses . . . ."); *New Jersey Bank Nat'l Assoc. v. Varano,* 502 N.Y.S.2d 35, 36 (N.Y. App. Div., 2d Dep't 1986) ("[I]n the guarantee executed by the defendants Varano, they waived their right to interpose counterclaims, defenses and rights to set off of any kind. The defendants Varano are bound by the terms of the agreement admittedly validly executed by them . . . . Accordingly, partial summary judgment should have been granted on the issue of liability against them.").

With regard to that argument, Plaintiff responds that Fed. R. Evid. 408 precludes the Court from relying on the parties' unsuccessful settlement negotiations (e.g., regarding forming a "workout plan") to either (1) find a genuine dispute of material fact regarding waiver or estoppel, sufficient to deny summary judgment on Plaintiff's claims, or (2) find a genuine dispute of material fact regarding bad faith, sufficient to denying summary judgment on Defendants' counterclaim under the Automobile Dealers' Day in Court Act. (Dkt. No. 69, Attach. 2, at 24-26 [attaching pages "18" through "20" of Plf.'s Reply Memo. of Law].) In so doing, Plaintiff argues that (1) the "offered for another purposes" exception, found in Fed. R. Evid. 408(b), does not apply, (2) in any event, the negotiations are irrelevant because they occurred after Plaintiff had already obtained grounds to justifiably terminate the Finance Agreements, and (3) in any event, the documents in question are subject to a confidentiality agreement. (*Id*.)[9]

The Court agrees with Plaintiff. Moreover, the Court finds that, even if the settlement negotiations are considered, adequate grounds exist upon which to grant summary judgment to Plaintiff on its claims and Defendants' counterclaims, as a matter of law.

---

[9]    *See* Fed. R. Evid. 408 ("(a) Prohibited Uses. Evidence of the following is not admissible–on behalf of any party–either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction: (1) furnishing, promising, or offering–or accepting, promising to accept, or offering to accept–a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or a statement made during compromise negotiations about the claim–except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority. (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.").

With regard to Defendants' waiver argument, the Court finds that Plaintiff has not waived its rights under the Guaranties.[10]  Section 9.1 of the Wholesale Finance Agreements states as follows, in pertinent part:

> The failure or delay of AHFC to exercise any right or remedy which it may have under this Agreement shall not be deemed a waiver of the right to exercise such right or remedy at a future date. The waiver of any breach or default shall not be deemed a waiver of any future breach or default or of any provision of this Agreement. The failure or delay of AHFC to take action in the event of a breach or default shall not preclude AHFC from taking action upon such breach or default or any later breach or default.

Moreover, even if Section 9.1 did not exist, the Court would find that there has been no waiver based on the current record.  Plaintiff sent four letters to Defendants on or about April 7, 2009, June 22, 2009, October 20, 2009, and January 19, 2010.  (Dkt. No. 52, Attach. 3, at ¶¶ 21-26 [Francy Aff., dated Dec. 13, 2010].)  These letters explained that Defendants had failed to pay their obligations under the Wholesale Finance Agreements.  (*Id*.)  Plaintiff declared Defendant Dealerships out of trust and in default under the terms on conditions of the Finance Agreements.  (*Id*.) Plaintiff demanded that Defendant Dealerships immediately cure the default. (*Id*.)  Defendant Dealerships did not respond to the demand letters.  (*Id*.)

Turning to Defendants' estoppel argument, the Court finds that Plaintiff is not equitably estopped under the circumstances.  In New York, the elements of the doctrine of equitable estoppel are as follows: (1) an *inducement* by the party to be estopped;[11] (2) *substantial reliance*

---

[10]       The Court notes that, "[w]hile estoppel requires detriment to the party claiming to have been misled, waiver requires . . . the voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable."  *Nassau Trust Co. v. Montrose Concrete Prods. Corp.*, 56 N.Y.2d 175, 184 (N.Y. 1982).

[11]       *Rose v. Spa Realty Assocs.*, 42 N.Y.2d 338, 344 (N.Y. 1977) ("Once a party to a written agreement has *induced* another's significant and substantial reliance upon an oral modification, [that] party may be estopped from invoking the statute to bar proof of [the] oral modification."); *see also Metro. Life Ins. Co. v. Childs Co.*, 230 N.Y. 285, 292-93 (N.Y. 1921)

by the party seeking the estoppel;[12] and (3) a resulting *detriment* to the party seeking the

estoppel.[13]  Sometimes, the requirement that the reliance be *substantial* is replaced with a

---

("An estoppel rests upon *the word or deed of one party* upon which another rightfully relies, and, so relying, changes his position to his injury.") [emphasis added], *accord, Nassau Trust Co. v. Montrose Concrete Prods. Corp.*, 56 N.Y.2d 175, 184 (N.Y. 1982), *Triple Cities Constr. Co. v. Maryland Cas. Co.*, 4 N.Y.2d 443, 448 (N.Y. 1958), *Lynn v. Lynn,* 302 N.Y. 193, 205 (N.Y. 1951).

[12]    *Rose*, 42 N.Y.2d at 344 ("Once a party to a written agreement has induced another's significant and *substantial reliance* upon an oral modification, [that] party may be estopped from invoking the statute to bar proof of [the] oral modification.") [emphasis added]; *Isaacs Bus. Ventures, Inc. v. Thompson*, 636 N.Y.S.2d 906, 908 (N.Y. App. Div., 3d Dep't 1996) ("Likewise, defendants failed to adduce sufficient credible evidence showing that they *substantially relied* upon the oral modification to their detriment. Accordingly, they failed to establish an estoppel . . . .") [emphasis added].

[13]    *See Metro. Life Ins. Co.*, 230 N.Y. at 292-93 ("An estoppel rests upon the word or deed of one party upon which another rightfully relies, and, so relying, *changes his position to his injury*. When this occurs it would be inequitable to permit the first to enforce what would have been his rights under other circumstances.") [emphasis added], *accord, Nassau Trust Co.*, 56 N.Y.2d at 184, *Triple Cities Constr. Co.*, 4 N.Y.2d at 448, *Lynn,* 302 N.Y. at 205; *Fisk Bldg. Assocs. LLC v. Shimazaki II, Inc.*, 907 N.Y.S.2d 2, 4 (N.Y. App. Div., 1st Dep't 2010) ("As to their third affirmative defense, defendants did not show detrimental reliance, a necessary element of equitable estoppel."); *Town of Hempstead v. Inc. Village of Freeport,* 790 N.Y.S.2d 518, 520 (N.Y. App. Div., 2d Dep't 2005) ("To establish an estoppel, a party must prove that it relied upon another's actions, its reliance was justifiable, and that, in consequence of such reliance, *it prejudicially changed its position*") [emphasis added]; *Isaacs Bus. Ventures, Inc.*, 636 N.Y.S.2d at 908 ("Likewise, defendants failed to adduce sufficient credible evidence showing that they substantially relied upon the oral modification *to their detriment*. Accordingly, they failed to establish an estoppel . . . .") [emphasis added]; *Chadirjian v. Kanian*, 506 N.Y.S.2d 880, 882 (N.Y. App. Div., 2d Dep't 1986) ("In order to establish a claim based upon equitable estoppel, a plaintiff must prove that her reliance upon the words or actions of the defendant was 'justifiable' and that in consequence of such reliance, she *prejudicially changed her position*.") [emphasis added]; *The Savage Is Loose Co. v. United Artists Theatre*, 413 F. Supp. 555, 559 (S.D.N.Y. 1976) ("We agree that, if plaintiffs did subsequently modify the agreement, and defendant, in reliance on the modification, *changed his position to his injury*. . . then plaintiffs would be estopped . . . . We stress that mere proof of oral modifications is insufficient to establish an estoppel; defendants . . . must prove that the plaintiffs caused defendants to act in a manner that would not otherwise have occurred but for the plaintiffs' conduct. ") [citations and internal quotation marks omitted; emphasis added]; *cf. Rose*, 42 N.Y.2d at 344 ("Once a party to a written agreement has induced another's *significant* and substantial reliance upon an oral modification, [that] party may be estopped from invoking the statute to bar proof of [the] oral modification. . . .  [The] conduct relied upon to establish estoppel *must not be otherwise compatible with the agreement as written*.") [emphasis added], *accord, Cliffs Mgmt. Corp. v. Great E. Mgmt. Corp.*, 445 N.Y.S.2d 460, 462 (N.Y. App. Div., 1st Dep't 1981).

requirement that the reliance be *justifiable*, *rightful* or *reasonable*.[14]

According to Defendants, they relied on oral assurances from Plaintiff that it would consider the workout plan (which Plaintiff did not sufficiently do, having considered the overview of the plan for only eight days and the plan itself for only four days), causing Defendants to incur the cost in preparing a workout plan, which they would not have otherwise incurred.  However, Defendants have not established (a) conduct by Plaintiff that qualifies as an *inducement* for purposes of equitable estoppel, (b) reliance by Defendants that was *substantial* in nature, or (c) a resulting *detriment* to Defendants.

With regard to the first two elements, Defendants gloss over the fact that (1) Plaintiff's purported oral assurances were accompanied by written statements essentially preserving their rights, and (2) Plaintiff did, in fact, wait several days after receiving the overview and workout plan before filing suit.  With regard to this third element, any such substantial reliance by Defendants could not possibly inured to their detriment, because Plaintiff took no action against Defendants that it could not otherwise take under the parties' written agreements.  Defendants'

---

[14]     *See, e.g., Nassau Trust Co.*, 56 N.Y.2d at 184 ("An estoppel rests upon the word or deed of one party upon which another *rightfully* relies and so relying changes his position to his injury. . . .  It is imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought.") [internal quotation marks omitted; emphasis added], *accord,Syracuse Orthopedic Specialists, P.C. v. Hootnick*, 839 N.Y.S.2d 897, 900 (N.Y. App. Div., 4th Dep't 2007); *Town of Hempstead*, 790 N.Y.S.2d at 520 ("To establish an estoppel, a party must prove that it relied upon another's actions, its reliance was *justifiable*, and that, in consequence of such reliance, it prejudicially changed its position.") [emphasis added]; *Chadirjian*, 506 N.Y.S.2d at 882 ("In order to establish a claim based upon equitable estoppel, a plaintiff must prove that her reliance upon the words or actions of the defendant was 'justifiable' and that in consequence of such reliance, she prejudicially changed her position."); *Moore v. Cnty. of Rockland*, 596 N.Y.S.2d 908, 910 (N.Y. App. Div., 3d Dep't 1993) ("Plaintiff cannot rely on an estoppel theory, as estoppel requires plaintiff's *reasonable* reliance upon a representation or act evincing defendants' position.") [emphasis added].

argument that their substantial reliance on Plaintiff's inducement *caused* them to incur the cost of preparing the workout plan is unpersuasive given the express language of Section 24 of the Continuing Personal Guaranties, which states as follows:

> Guarantor agrees to pay to AHFC immediately upon demand all costs and expenses (including, without limitation, attorneys' fees and disbursements) incurred by AHFC in connection with or incidental to the workout, enforcement or attempted enforcement of this Guaranty or the protection of AHFC's interest hereunder, whether or not an action is filed in connection therewith, and in connection with or incidental to the workout enforcement or attempted enforcement, of a waiver or amendment of any term or provision hereof.

Furthermore, even if Section 24 of the Continuing Personal Guaranties did not exist, the Court would find that there has been no detrimental reliance for the following two reasons: (1) Defendants do not adduce admissible record evidence of the amount of that cost (*see generally* Dkt. No. 64, Attach. 2-3 [Simao Affid. and Exhibits); and (2) the "workout plan" consisted of a written overview of such a plan, which took only four days to prepare and was only thirteen pages in length, and the plan itself, which took only an additional four days to prepare and was only nine pages longer than the overview (Dkt. No. 64, Attach. 2, at ¶¶ 22, 30-33, 41, 44 [Simao Affid.]; Dkt. No. 64, Attach. 3, at 79-81, 86-98 [attaching Exs. H and J to Simao Affid.]).  Such a cost must have had to be *substantial* to constitute a detriment for purposes of a collateral estoppel defense.[15]

The only elaboration required regarding the grounds for the Court's dismissal of Defendants' counterclaims involves Defendants' counterclaim under the ADDCA.  That claim is dismissed not just because Defendants have failed to adduce admissible record evidence that (1)

---

[15]    *See Davis v. Davis*, 513 N.Y.S.2d 405, 412 (N.Y. App. Div., 1st Dep't 1987) (rejecting a wife's equitable estoppel argument against her husband in divorce proceeding because, in part, "the wife produced no documentation to establish any substantial expenses incurred or value obtained from the improvements" made to an apartment purportedly purchased in reliance on assures made by her husband).

Plaintiff was, during the time in question, an "automobile manufacturer" engaged in commerce, or that (2) Plaintiff acted in bad faith, but because Defendants have also failed to adduce admissible record evidence that (3) Defendants were injured *because of* Plaintiff's alleged failure to act in good fath as opposed to some other cause (such as their own conduct). *See* 15 U.S.C. § 1222 ("An automobile dealer may bring suit against any automobile manufacturer . . . , and shall recover the damages by him sustained and the cost of suit *by reason of the failure* of said automobile manufacturer . . . to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer . . . ."); *Maschio v. Prestige Motors*, 37 F.3d 908, 910 (3d Cir. 1994) (indicating that causation is part of the fourth element), *accord, Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 441 (9th Cir. 1979).

   E.    **Whether Summary Judgment Should Nonetheless Be Denied Under Fed. R. Civ. P. 56(d), Because Plaintiff Has Denied Defendants Access to Potentially Favorable Information**

       The fifth issue before the Court is whether summary judgment should nonetheless be denied under Fed. R. Civ. P. 56(d), because Plaintiff has denied Defendants access to potentially favorable information.  Defendants argue that the "potentially favorable information" to which they were denied access consists of (1) documents demanded by Defendants (described in Dkt. No. 64, Attach. 3, at 22-60), which are "necessary . . . [for Defendants] to substantiate [their] defenses and counterclaims," and (2) the deposition testimony of four of Plaintiff's employees (i.e., Warren Bradley, Mark Will, Don Francy and Laurie Methot), which is necessary "to establish the parties' oral agreement to refrain from taking any adverse action pending discussion of the workout plan."  (Dkt. No. 64, Attach. 4, at 32-33 [attaching pages "27" and "28" of Defs.' Opp'n Memo. of Law].)  In response, Plaintiff argues that the discovery requested by Defendants is both vague and irrelevant for purposes of Plaintiff's motion, and thus fails to raise any genuine

disputes of material fact.  (Dkt. No. 69, Attach. 2, at 26-29 [attaching pages "20" through "23" of Plf.'s Reply Memo. of Law].)

After carefully considering the matter, the Court agrees with Plaintiff's argument for the reasons stated by it in its reply memorandum of law.  (*Id*.)  The Court would add only that, while Defendants have certainly opposed Plaintiff's repeated requests for a stay of discovery in this action, Defendants do not appear to have made sufficiently diligent efforts to obtain the discovery described above.

For example, with regard to the discovery demands in question, Defendants never filed a motion to compel Plaintiff's response to those demands.  Defendants complain that, while Plaintiff's response to their discovery demands was due during the days following November 2, 2010, Plaintiff did not serve that response until January 24, 2011.  (Dkt. No. 64.)[16]  The problem is that Defendants did not file a motion to compel discovery before the expiration of the discovery deadline on January 31, 2011 (or at any time).  (*See generally* Docket Sheet.)  Rather, Defendants appear to have made a strategic decision to let discovery languish following November 2, 2010, in the hope of persuading the Court that Plaintiff's imminent motion for summary judgment should be denied based on Plaintiff's need for the documents demanded.[17]  For these reasons, the Court finds that the third factor of the *Miller* test (described above in Part II of this Decision and Order) is neutral with regard to the discovery demands described by Defendants.

---

[16]     On June 1, 2010, Defendants represented to the Court that discovery would be complete by November 15, 2010.  (Dkt. No. 45, at 2.)  On June 17, 2010, the Court set November 15, 2010, as the discovery deadline.  (Dkt. No. 46, at 2.)  On September 15, 2010, on Defendants' motion, that discovery deadline was extended to January 31, 2011.  (Text Order filed Sept. 16, 2010.)  On Plaintiff's motion, that discovery deadline was stayed on October 22, 2010.  (Text Order filed Oct. 22, 2010.)  However, that stay was lifted on November 2, 2010. (Text Order filed Nov. 2, 2010.)

[17]     It is conceivable that Defendants did so in exchange for Plaintiff's agreeing to Defendants' request for an extension of the time for Defendant Dealerships to disclose their expert witness.  (Dkt. No. 50.)

The Court reaches the same conclusion with regard to the deposition testimony of the four employees described by Defendants.  On June 1, 2010, Defendants represented to the Court that discovery would be complete by November 15, 2010 (even after knowing that Plaintiff intended to oppose Defendants' "attempt to depose so many employees of Plaintiff").  (Dkt. No. 45, at 2, 4-5.)  Moreover, despite the fact that the discovery deadline was extended to January 31, 2011, the Court can find no indication in the record that Defendants even attempted to depose these individuals.  (*See generally* Dkt. No. 64.)  The Court notes that Defendants have had notice of the grounds for Plaintiff's motion since at least December 14, 2010.  (Dkt. No. 52.)

### F.    Nature of Relief to Which Plaintiff Is Entitled, Should the Court Grant Plaintiff's Motion

The final issue before the Court regards the nature of the relief to which Plaintiff is entitled, should the Court grant Plaintiff's motion.  In its Complaint and memorandum of law, Plaintiff has requested the following three forms relief:

(1) as against Defendant V.M. Paolozzi Imports, Inc., d/b/a DealMaker at Drum Honda a/k/a DealMaker Honda of Watertown, and against Defendant Mark V. Picarazzi, and against Defendant Philip J. Simao, a Judgment in the amount of $2,120,493.09, for which these Defendants are to be held jointly and severally liable; and

(2) as against Defendant DealMaker of Potsdam, LLC d/b/a DealMaker Honda of Potsdam, and against Defendant Philip J. Simao, a Judgment in the amount of $1,502,221.94, for which these Defendants are to be held jointly and severally liable; and

(3) as against Defendant V.M. Paolozzi Imports, Inc., d/b/a DealMaker at Drum Honda a/k/a DealMaker Honda of Watertown, a Judgment in the amount of $203,189.60.  (Dkt. No. 1, at ¶¶ 70-72 [Plf.'s Comp.]; Dkt. No. 52, Attach. 12, at 59-60 [attaching pages "49" and "50" of

Plf.'s Memo. of Law].)[18]

Plaintiff has supported this request with admissible record evidence.  (Dkt. No. 52, Attach. 4, at ¶¶ 29-43 [Plf.'s Rule 7.1 Statement].)  Defendants have not adduced admissible record evidence creating a genuine dispute of material fact regarding the nature of that relief.  (Dkt. No. 64, Attach. 1, at ¶¶ 29-43 [Defs.' Rule 7.1 Response].)  Rather, they either expressly admit several of the facts asserted, or dispute instead whether liability exists.  (*Id.*)  As stated above in Part III.B. of this Decision and Order, when a party opposing a motion for summary judgment fails to respond to a request or argument contained in the motion, the moving party's burden with respect to that request or argument is lightened.  Here, the Court finds that Plaintiff has met its lightened burden.  The Court would add only that it would reach the same conclusion even if it were to subject Plaintiff's request to the more rigorous scrutiny appropriate for a contested request or argument.

For all of these reasons, the Court awards Plaintiff the relief it requests.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion for summary judgment (Dkt. No. 53) is **<u>GRANTED</u>**; and it is further

**ORDERED** that summary judgment is awarded to Plaintiff on all of its claims and all of Defendants' counterclaims; and it is further

**ORDERED** that all of the counterclaims in Defendants' Answers are **<u>DISMISSED</u>**; and it is further

---

[18]    There is a discrepancy of $0.15 between what Plaintiff lists throughout the record as the indebtedness owed to it by Defendants in both the amount of $2,120,493.09 and the amount of  $1,502,221.94.  (*Compare* Dkt. No. 52, Part 12, at 23-24 [attaching pages "13" and "14" of Plf.'s Memo. of Law] *with* Dkt. No. 52, Part 12, at 59 [attaching page "49" of Plf.'s Memo. of Law].)  The higher values are supported by an Affidavit from Laurie Methot.  (Dkt. No. 52, Attach. 2, at ¶¶ 9-10.)  As a result, the Court has awarded Plaintiff the higher values of both awards requested.

**ORDERED** that the Clerk of the Court is directed to issue a Judgment for Plaintiff and against Defendants, awarding Plaintiff the following relief:

(1) as against Defendant V.M. Paolozzi Imports, Inc., d/b/a DealMaker at Drum Honda a/k/a DealMaker Honda of Watertown, and against Defendant Mark V. Picarazzi, and against Defendant Philip J. Simao, a Judgment in the amount of **$2,120,493.09**, for which these Defendants are to be held jointly and severally liable; and

(2) as against Defendant DealMaker of Potsdam, LLC d/b/a DealMaker Honda of Potsdam, and against Defendant Philip J. Simao, a Judgment in the amount of **$1,502,221.94**, for which these Defendants are to be held jointly and severally liable; and

(3) as against Defendant V.M. Paolozzi Imports, Inc., d/b/a DealMaker at Drum Honda a/k/a DealMaker Honda of Watertown, a Judgment in the amount of **$203,189.60**.

Dated: March 29, 2012
     Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge